Filed 12/30/20  American Express Bank FSB v. Singh CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| AMERICAN EXPRESS BANK FSB, | |
| Plaintiff, | E074042 |
| v. | (Super.Ct.No. RIC1714416) |
| SUKHDEV L. SINGH et al., | OPINION |
| Defendants; | |
| EYAD YASER ABDELJAWAD, | |
| Objector and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Craig Riemer, Judge.  Reversed.

Bridgepoint Law Group and Eyad Yaser Abdeljawad, for Objector and Appellant.

Objector and appellant Eyad Yaser Abdeljawad's law firm was counsel of record for defendant Sukhdev L. Singh in this matter.  Abdeljawad challenges the trial court's order imposing a $1,000 sanction against the firm.  In our view, the record reveals ample cause for imposing sanctions.  The trial court's order, however, does not specify the

1

statutory basis for the sanction, nor does it describe the conduct or circumstances justifying it. We therefore are required to reverse. On remand, the trial court may enter a new order that articulates the conduct or circumstances the court viewed as justifying imposition of sanctions.

## I. FACTS

On July 31, 2019, a substitution of attorney was filed to remove Route 66 Law APC as counsel of record for Singh. Abdeljawad is the sole owner of that law firm. On August 9, 2019, however, Singh appeared for the scheduled court trial and testified under oath that he was not aware a substitution of attorney had been filed, nor did he ever sign one.[1] The trial court compared the signature on Singh's driver's license and discovery documents to the signature on the substitution of attorney, and found that they did not match. The court issued an order to show cause (OSC) "re Striking the Substitution of Attorney filed on July 31 2019 for Forgery of Signature of Defendant," setting a hearing on the matter for September 3, 2019. It ordered that Abdeljawad appear in person for the hearing.[2]

---

[1] Neither a transcript of the August 9 proceedings, nor the court's written order to show cause, is included in our record. Our description is taken from notes included on the court's register of actions.

[2] The register of actions states that Abdeljawad was ordered "to personally appear on September 3 2019." Abdeljawad has never asserted that the phrase "personally appear" permitted a telephonic appearance. The order setting the September 3 hearing was not included in our record. It is possible that its language is more express about a courtroom presence than its summary in the register of actions. In any case, there is no question that the trial court intended to order Abdeljawad appear in person, not telephonically, and that Abdeljawad so understood the trial court's order.

2

At the September 3 hearing, Abdeljawad appeared, but he did so telephonically, rather than in person. Our record does not include a transcript of those proceedings. The trial court's minutes reflect that the court "inquire[d] of attorney, Mr. Abdeljawad, as to why he is not personally present in Court today as ordered." The minutes also reflect that the court and counsel "confer[red]" regarding the contested signature on the substitution of attorney.[3] The court found that the signature on the document was not Singh's, and it ordered the substitution of attorney stricken and Abdeljawad's firm reinstated as Singh's counsel of record.[4] The court also set a new hearing for October 8, 2019, ordering that "SUKHDEV L SINGH/ ROUTE 66 LAW APC […] appear and show cause, if any, why sanctions not to exceed $1500.00 . . . should not be imposed for failure to comply with 8/9/19 Court Order." The order was not specific as to the contemplated statutory basis for imposing sanctions, stating: "'Sanctions' (as that term is used herein) includes but is not limited to all remedies available to the court pursuant to [Code of Civil Procedure]

---

[3] The trial court later characterized Abdeljawad as stating the following regarding the signature: "[At the] last hearing that you had in front of me . . . first you represented that [Singh] had signed the substitution of attorney. And then you admitted that you had not witnessed him sign the substitution of attorney. You represented that you had had a conversation with him in which he asked . . . you to substitute out. Then you admitted that that conversation was not actually one that you had. I had no competent evidence to show me that . . . that his contention[] that the signature was a forgery was in fact false."

[4] The minutes state that "Abdeljawad" was reinstated as attorney of record. More precisely, Abdeljawad's law firm had been listed as attorney of record, rather than him personally. As noted, however, Abdeljawad is the sole owner of his law firm. Subsequent docket entries reflect that Route 66 Law APC in fact was reinstated as counsel of record and, eventually, replaced by a different firm.

secs. 128.6, 177.5, 575.2, the California Rules of Court and Riverside Local Rules of court and/or other statute or existing case precedent."[5]

In response to the court's inquiry at the September 3 hearing, as well as in testimony and a declaration submitted in response to the second OSC, Abdeljawad explained that he had failed to appear in person because he was in Chicago visiting family from August 30 through September 3, 2019. He declared that he had received late notice of the hearing, learning of it only on August 30 via a phone call from his assistant that came while he and his wife were at the airport, already through security and waiting to board their flight. The reason he had not received timely notice of the hearing was that the notice was sent to the address the court had on file for his firm, which was out of date, and forwarding took time.

Abdeljawad informed the trial court that his address on file had been out of date because he moved his office in early August 2019, shortly after filing the substitution of counsel and after he thought he had already "properly exited" from the case. He stated that he had filed an updated change of address with the trial court once he "realized that mail continued to go to [his] former address," suggesting that he had previously thought updating his information on the State Bar's website would have been sufficient to "apprise the Court of this matter where [his] office is located." The trial court noted, however, that as recently as October 2, 2019, Abdeljawad had continued to file documents in the case using his former address.

---

[5] Further undesignated statutory references are to the Code of Civil Procedure.

Abdeljawad characterized his telephonic appearance on September 3 as "the best option that [he] could have conceived at the time in light of the circumstances." The trial court observed that Abdeljawad had been "presented with a choice," specifically, "I can go to Chicago, but I know that if I do so, I will not be able to personally appear on the date and time ordered, or I can not go to Chicago and comply with the Court's order." Abdeljawad chose "to go to Chicago and thus prevent [himself] from personally appearing." The trial court asked how this decision was consistent with Abdeljawad's professions of "great respect" for the Court and its authority. Abdeljawad responded that "it was more of a lapse of judgment . . . rather than something malicious."

The trial court imposed sanctions of $1,000 on "Route 66 Law, a Professional Corporation," and confirmed with Abdeljawad that he is the "sole owner" of that firm. The court rejected Abdeljawad's request to reduce the sanctions, commenting that it thought "the State Bar needs to know about what it is you were ordered to do and what it is you failed to do."

## II.  DISCUSSION

Abdeljawad contends that he had a "valid excuse for his inability to appear at the September 3, 2019 hearing," so the trial court's decision to impose sanctions was an abuse of discretion. He speculates that the trial court's decision to issue sanctions was in fact "completely retaliatory," and a product of "animus" engendered by his application to

this court for writ relief with respect to continuance of the trial date.[6] We find no merit in this argument.

Although the trial court did not specify the statutory basis for its sanctions order, the language of the OSC and the trial court's statements at the October 8, 2019 hearing invoke section 177.5.[7] That statute authorizes monetary sanctions, not to exceed $1,500, "for any violation of a lawful court order by a person, done without good cause or substantial justification." (§ 177.5.) "The trial court has broad discretion to impose sanctions for violations of court orders . . . subject to reversal only for arbitrary or capricious action." (*In re Marriage of Eustice* (2015) 242 Cal.App.4th 1291, 1309.)

We find nothing arbitrary or capricious about the trial court's decision to sanction Abdeljawad for violating its order that he appear in person at the September 3 hearing. It is possible that the trial court found Abdeljawad's claim that he received late notice of the September 3 hearing not to be credible. In any case, it was Abdeljawad's responsibility to ensure that his change of address did not disrupt his law practice, including by updating his address with the court or otherwise ensuring that important communications

---

[6] On October 7, 2019, the day before the second OSC hearing, Abdeljawad filed a petition for writ relief in this court seeking a stay of the trial, which at that time was scheduled for October 11, 2019. (Case no. E073819.)

[7] It is conceivable that the trial court considered sanctioning Abdeljawad for forging the signature of his client on the substitution of counsel by holding him in civil contempt pursuant to section 1218, subdivision (a). Failure to keep the court appraised of a current address could also have been a consideration. The court's focus, however, appears to have been on Abdeljawad's violation of its order that he appear in person at the September 3 hearing.

6

would not be delayed. Moreover, Abdeljawad has offered no particular reason why, once he received notice, it was impossible or impractical to either forego his trip to Chicago or to return a day earlier than planned, rather than making himself unavailable for the hearing. The trial court could have reasonably found Abdeljawad had no good cause or substantial justification for disregarding its order that he appear in person to respond to his client's allegation that the client's signature on the substitution of counsel form was forged.

Nevertheless, Abdeljawad correctly asserts that section 177.5 requires that "[a]n order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order." (§ 177.5.) Our colleagues in the Sixth District Court of Appeal have noted that this requirement's "purpose 'is to fulfill the "rudiments" of due process required for governmental imposition of a penalty upon an attorney or party—both for due process' own, constitutional sake and to ensure that the power conferred by the statute will not be abused. [Citations.] Moreover, in some cases the court's recitation will be an invaluable aid to a reviewing court determining whether the trial court abused its discretion in awarding sanctions.'" (*Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 977.) We would add that, in circumstances where sanctions are imposed against an attorney and reported to the State Bar, the recitation may be valuable in determining whether any additional discipline may be warranted. (See Bus. & Prof. Code, § 6068, subd. (o)(3) [requiring sanctions of $1,000 or more be reported to the State Bar].) Even if the trial court's motivation for imposing sanctions may be

7

discernible from the record of oral proceedings, a written statement of reasons for the sanctions is required.  (See *People v. Hundal* (2008) 168 Cal.App.4th 965, 970.)

Here, the only written sanctions order issued by the trial court was its minutes, which reflect the following order: "Sanctions in amount of $1,000 imposed upon ROUTE 66 LAW APC payable to the Clerk of Court on or before 10/28/19."  The minutes do not explain the conduct or circumstances justifying the order.  We therefore must reverse it. (See *Caldwell v. Samuels Jewelers*, *supra*, 222 Cal.App.3d at p. 977.)  Nevertheless, "[o]n remand, the court will be able to reenter its order with adequate justification . . . ." (*Id.* at p. 979)

## III.  DISPOSITION

The sanctions order is reversed.  On remand, the court may reenter its order with the required statement of the "conduct or circumstances justifying the order." (§ 177.5.) The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.

8